2005-NMCA-044

110 P.3d 1090

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Donald COLLINS, Defendant–Appellant.**

**No. 24,118.**

Court of Appeals of New Mexico.

March 4, 2005.

Patricia A. Madrid, Attorney General, Ann M. Harvey, Assistant Attorney General, Santa Fe, NM, for Appellee.

Daniel R. Lindsey, Daniel R. Lindsey, P.C., Clovis, NM, for Appellant.

## OPINION

SUTIN, Judge.

{1} Charged with aggravated DWI and convicted of DWI, Defendant appeals on eight grounds. We affirm.

## BACKGROUND

{2} On January 27, 2001, Officer Christopher Williams was talking to another officer in the parking lot of a gas station when he saw a pick-up truck, while turning left at an intersection, cross left of the center of the street onto which he was turning, and almost strike another vehicle that was stopped in the lane reserved for traffic going the other direction. Officer Williams pursued Defendant and stopped him a short distance away when Defendant pulled into the parking lot of an apartment building.

{3} The officer observed the following signs of intoxication: Defendant stumbled when exiting his vehicle, an odor of alcohol coming from Defendant, slurred speech, swaying, and one watery and bloodshot eye. The officer learned that Defendant's other eye was a prosthesis. The officer administered field sobriety tests including the one-leg stand and the walk-and-turn test. After the officer demonstrated and explained the one-leg stand he asked Defendant if he had any problems that would prevent him from performing the test, to which Defendant answered that he had been working on boilers all day. The officer nonetheless continued with the tests, concluded that Defendant was driving while under the influence of alcohol, placed him under arrest, and transported him to jail. At the jail, the officer administered a twenty-minute waiting period and then administered a breath alcohol content (BAC) test. Three breath samples were taken, the first was an insufficient sample, the second was .18, and the third was .17.

{4} Defendant was charged with aggravated driving while under the influence of intoxicating liquor or drugs (aggravated DWI), pursuant to NMSA 1978, § 66-8-102(D) (2004). The case was tried to a jury. The jury was instructed on the charges of aggravated DWI and driving with a BAC of .08 or greater (DWI .08) as a lesser included offense of the aggravated DWI charge. Defendant was convicted of DWI .08. Additional facts will be detailed as necessary in the opinion.

## DISCUSSION

{5} Defendant raises eight arguments on appeal: (1) the district court erred in submitting to the jury an instruction that Defendant could be found guilty of DWI .08; (2) by not checking to see if there was anything in Defendant's mouth, the officer did not administer the breath test according to New Mexico regulations, rendering the test results unreliable and inadmissible; (3) the district court erred in admitting the results of the BAC test because the State failed to make the required threshold showing that the machine used to test Defendant was reliable; (4) the court denied Defendant his right to confront the witnesses against him; (5) Defendant's seizure was unreasonable and thus evidence obtained therefrom was inadmissible; (6) the State made improper comments during its cross-examination of Defendant, thus denying him a fair trial; (7) Defendant was prejudiced by cumulative error; and (8) the district court erred in denying Defendant's motion for a directed verdict.

### 1. The District Court Did Not Err by Instructing the Jury on the Offense of DWI .08

{6} Aggravated DWI can be committed in one of three ways: (1) driving with a blood or BAC of .16 or greater (DWI .16), (2) causing bodily injury to a human being while driving while intoxicated, or (3) refusing to submit to a chemical test. *Id.* The information charging Defendant with aggravated DWI did not specify with which type of aggravated DWI Defendant was charged. At trial, the State requested and the court submitted jury instructions on the offenses of aggravated DWI .16 and DWI .08 as a lesser included offense of DWI .16. Defendant was convicted of DWI .08.

{7} Defendant argues that the district court erred in submitting a jury instruction for DWI .08 to the jury for three reasons: (1) he was charged only with aggravated DWI and thus was not put on notice that he needed to defend against the charge of DWI .08, (2) DWI .08 is not a lesser included offense of aggravated DWI, and (3) the district court erred by amending the pleadings sua sponte to include the charge of DWI .08.

### a. Notice and Lesser Included Offense Analysis

{8} When one offense is a lesser included offense of a crime named in a charg-

ing document, the defendant is put on notice that he must defend not only against the greater offense as charged but also against any lesser included offense. *See State v. Meadors,* 121 N.M. 38, 45, 908 P.2d 731, 738 (1995) ("[A]n offense is a lesser-included offense only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense. Accordingly, the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense."). Thus, if we conclude that DWI .08 is a lesser included offense of aggravated DWI it will be dispositive of Defendant's argument that he was not on notice of the charges against him. Whether a defendant is erroneously convicted of an uncharged lesser included offense is a question of law which we review de novo. *See State v. McGee,* 2002–NMCA–090, ¶ 7, 132 N.M. 537, 51 P.3d 1191.

■ {9} *Meadors* sets forth the test for determining whether one offense is a lesser included offense of another. 121 N.M. at 41–47, 908 P.2d at 734–40. First, one must decide whether the stringent "strict elements" test is met. *Id.* at 42, 908 P.2d at 735. Under the strict elements test, one offense is "a lesser-included offense of another only if the statutory elements of the lesser offense are a sub-set of the statutory elements of the greater offense such that it would be impossible [to ever] commit the greater offense without also committing the lesser offense." *Id.*

■ {10} If the strict elements test is not met, then the court should turn to the "cognate approach" to determine whether one offense is a lesser included offense of another. *Id.* at 44, 908 P.2d at 737. The cognate approach was developed in *Meadors,* as a clarification of the earlier rule developed in *State v. DeMary,* 99 N.M. 177, 179, 655 P.2d 1021, 1023 (1982). *Meadors,* 121 N.M. at 45, 908 P.2d at 738. Under the cognate approach, a party is entitled to an instruction on a lesser included offense, even if the strict elements test is not met, when:

(1) the defendant could not have committed the greater offense in the manner de-

scribed in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* at 44, 908 P.2d at 737.

■ {11} In the present case, no specific form of aggravated DWI was charged. The charge was essentially an open charge, which notified Defendant that he needed to prepare against all three forms of aggravated DWI. *See State v. Stephens,* 93 N.M. 458, 461, 601 P.2d 428, 431 (1979) (holding that an open charge of murder which did not specify the type or degree of murder nonetheless afforded proper notice to the defendant of the charges against him), *overruled on other grounds by State v. Contreras,* 120 N.M. 486, 903 P.2d 228 (1995); *State v. Gurule,* 90 N.M. 87, 91, 559 P.2d 1214, 1218 (Ct.App.1977) (holding that an indictment was not insufficient where it charged violation of one statute that could be committed in two ways).

{12} Defendant argues that DWI .08 cannot be a lesser included offense under a strict elements test because aggravated DWI can be committed without committing DWI .08. It is true that one can commit aggravated DWI with a BAC less than .08, either by refusing to submit to a chemical test or by causing injury to a human. § 66–8–102(D)(2), (3). Thus, because the greater crime of aggravated DWI can be committed in such a manner that the lesser crime of DWI .08 is not committed, we agree with Defendant that the strict elements test has not been met in this case. *See State v. Munoz,* 2004–NMCA–103, ¶ 13, 136 N.M. 235, 96 P.3d 796 (holding that the strict elements test was not met because, analyzing the statutory elements of the charges in the abstract, it was theoretically possible to commit the greater crime without committing the lesser crime); *State v. Romero,* 1998–NMCA–057, ¶¶ 15–16, 125 N.M. 161, 958 P.2d

119 (same). We therefore turn to the cognate approach.

{13} *Romero* provides support for the determination that DWI .08 was a lesser included offense in the present case under the cognate approach. *See id.* ¶ 14. In *Romero,* the greater offense with which the defendant was charged was burglary, of which one element is unauthorized entry. *Id.* ¶ 11. The lesser offense was criminal trespass, which could be committed by either entering or by remaining in a dwelling without permission. *Id.* ¶ 15. This Court determined that it was theoretically possible to commit the lesser crime without committing the greater crime, if the defendant had entered the dwelling with permission but remained without consent. *Id.* ¶¶ 15–16. Thus, we concluded that the strict elements test was not met. *Id.* ¶ 16. However, we further concluded that under the cognate approach, criminal trespass was a lesser included offense because the sole factual basis of the charge of criminal trespass was unauthorized entry, and under that theory the defendant could not have committed aggravated burglary without also committing criminal trespass. *Id.*

{14} In the case at hand, it is the greater offense, aggravated DWI, which can be committed in more than one way. However, this Court's reasoning in *Romero* applies. Under the evidence adduced at trial, the only factual basis for the aggravated DWI charge was DWI .16. Defendant nowhere presents an argument showing that he could not have had notice of DWI .08 as a lesser included offense. We conclude that the first prong of the *Meadors* cognate approach is met in this case because, under the offense in the charging document and the evidence adduced at trial, Defendant could not have committed the greater offense (DWI .16) without also committing the lesser offense (DWI .08). *See Meadors,* 121 N.M. at 42–43, 908 P.2d at 735–36.

{15} The second and third prongs of the *Meadors* cognate approach are also met. The second prong requires sufficient evidence to convict Defendant of the lesser charge to be introduced at trial. *Id.* at 44, 908 P.2d at 737. As we discuss in greater detail later in this opinion, the BAC results of .17 and .18 are sufficient evidence to show that Defendant drove with a BAC greater than .08. The third prong of the *Meadors* cognate approach is that the elements distinguishing between the greater and lesser offenses were sufficiently in dispute at trial such that a rational jury could acquit on the greater charge but convict on the lesser charge. *Id.* Defendant introduced evidence intended to show that the BAC machine was unreliable, including that it had given a previous out-of-range result during a calibration check and that Defendant had chewing tobacco in his mouth which may have affected the results of the test. However, there was also evidence that showed that, after the out-of-range reading, the machine received maintenance which included calibration checks that indicated the machine was within range and functioning properly. Further, there was evidence that if Defendant had tobacco in his mouth, the machine would have given a reading of "interferant detected," and that the machine did not give that reading. Under these circumstances, a rational jury could have concluded that Defendant's BAC may have been less than .16 but greater than .08. Thus, the third prong of the *Meadors* test is met in this case.

{16} We conclude that all three prongs of the *Meadors* cognate approach test are met in this case. We hold that DWI .08 was a lesser included offense of aggravated DWI in this case, and that Defendant had notice of the lesser included charge of DWI .08.

### b. Sua Sponte Amendment of the Charges

{17} Defendant also argues that the district court erred by amending the pleadings sua sponte to include the offense of DWI .08. He claims that the charges were amended by the court at the close of evidence over his objection in violation of the rule that an amendment to the charge may not "impose an entirely new charge against a defendant after the close of testimony." *State v. Roman,* 1998–NMCA–132, ¶ 9, 125 N.M. 688, 964 P.2d 852.

{18} During cross-examination of the officer by defense counsel on the subject of the field sobriety tests, the court requested coun-

sel for both parties to approach. Though the discussion at the bench is difficult to hear on the tapes submitted with the record, it is clear that the court addressed the issues of jury instructions. The State said that the jury instructions should include one on the charge of aggravated DWI, one on the charge of DWI .08 as a lesser included offense of aggravated DWI, and one on not guilty of DWI. The court then asked the State if it was amending the charge against Defendant and the State answered "Yes." Nothing more on amending the charges was discussed at the bench conference. Later, after the close of evidence, Defendant objected to the jury instruction on the lesser included offense of DWI .08. At that time, the court stated that it considered the charge amended to conform to the evidence adduced at trial.

{19} We fail to see how the amendment was sua sponte. During the questioning of the State's first witness, the court asked the State to clarify whether the State's request for the jury instruction of DWI .08 was also a motion to amend the charges. The State responded that it did seek to amend the charges and the court granted the State's request at that time.

■ {20} Moreover, even were the amendment in this case sua sponte or at the close of evidence, we would not find error. In *McGee*, we stated:

> *Meadors* starts with the accepted proposition that a trial court, upon the State's request, may consider an uncharged offense if the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime[.] ... Simply put, a defendant is on constructive notice that he may have to defend against a lesser included, uncharged offense that satisfies the strict elements test.

*McGee*, 2002–NMCA–090, ¶ 9, 132 N.M. 537, 51 P.3d 1191 (citation omitted). Similarly, a charging document containing only a greater offense gives constructive notice of an offense that is a lesser included offense under the cognate approach. *See Meadors*, 121 N.M. at 45, 908 P.2d at 739 (stating that under the cognate approach the defendant has notice of the charges against him when he cannot com-

mit the greater offense in the manner described in the charging document without also committing the lesser offense). Based on these cases, we conclude that there is no need to amend a charging document to include a lesser included offense because notice of a lesser included offense is constructively given. Since amendment of the information was unnecessary, Defendant's argument that amendment of the charges was error is without merit.

## 2. Admission of the BAC Test Results Was Not Error Even Though the Officer Did Not Inspect Whether Defendant Had Tobacco in His Mouth

■ {21} At trial, Defendant testified that he had chewing tobacco in his mouth during the BAC test. Defendant argues that the BAC test was not administered in accordance with the Implied Consent Act, NMSA 1978, §§ 66–8–105 to –112 (1978, as amended through 2003) (the Act), and regulatory requirements because the officer did not "ascertain" whether Defendant had chewing tobacco in his mouth by looking in Defendant's mouth with a flashlight. He also argues that because the requirements of the regulations were not met, he did not consent to the BAC test because consent is deemed given only if those requirements are met. Defendant argues that for these reasons the results of the BAC test were inadmissible.

■ {22} The State argues that the fact finder may not have believed that Defendant had chewing tobacco in his mouth, that evidence was introduced that the machine would have given a reading of "interferant detected" if there was tobacco in Defendant's mouth, and that the regulations did not require the officer to look in Defendant's mouth. The State must show compliance with regulations governing breath alcohol testing in order to lay a proper foundation that the results of such tests are reliable and thus introduce the results into evidence. *State v. Gardner*, 1998–NMCA–160, ¶ 9, 126 N.M. 125, 967 P.2d 465. Similarly, in order for a defendant to have been deemed to have given his consent to a breath test under the Act, the State must comply with the regulations governing breath testing. *Id.* Thus, we

view the issue as whether the State complied with the Act and the regulations in force at the time of Defendant's BAC test. We hold that the State complied with its requirements under the Act and the regulations. Thus, Defendant was deemed to have consented to the test and the results were admissible.

{23} We must interpret a regulation contained in the Administrative Code. We review the provision de novo, as we would a statute. *Cf. Rio Grande Chapter of the Sierra Club v. N.M. Mining Comm'n*, 2003–NMSC–005, ¶ 17, 133 N.M. 97, 61 P.3d 806 (noting that the appellate courts normally defer to agency rulings on the meaning of a regulation if "it implicates agency expertise" but also noting that statutory interpretation is done de novo); *Old Abe Co. v. N.M. Mining Comm'n*, 121 N.M. 83, 96, 908 P.2d 776, 789 (Ct.App.1995) (noting, while testing the constitutionality of a regulation, that we test regulations by the same standards with which we test statutes).

{24} Defendant cites the current Administrative Code provision governing BAC tests, which reads:

> Two breath samples shall be collected and analyzed by certified Operators or Key Operators only, and shall be end expiratory in composition. Breath shall be collected only after the Operator or Key Operator has ascertained that the subject has not had anything to eat, drink or smoke for at least 20 minutes prior to collection of the first breath sample. If during this time the subject eats, drinks or smokes anything, another 20 minutes deprivation period must be initiated.

7.33.2.12(B)(1) NMAC (2004). However, this regulation does not apply in this case. Defendant was arrested and the BAC test was administered on January 27, 2001. The regulation cited and quoted here did not become effective until March 14, 2001. 7.33.2.5 NMAC (2004).

{25} The regulation in effect at the time Defendant was tested, and therefore the regulation applicable in this case, reads:

> Two breath samples shall be collected and/or analyzed by certified Operators or Key Operators only, and shall be end expiratory in composition. Breath shall be collected only after the subject has been under continuous observation for at least 20 minutes prior to collection of the first breath sample. If during this time the subject regurgitates or introduces any foreign substance suspected of containing alcohol into his mouth or nose, another 20 minutes observation period must be initiated.

Regulations Governing Blood and Breath Testing Under the New Mexico Implied Consent Act, 6 N.M. Reg. No. 3 at 272, 275 (Feb. 15, 1995).

{26} This regulation did not require the officer to take affirmative steps to "ascertain" whether Defendant had anything in his mouth before administering the BAC test. *Id.* The officer needed only to continuously observe Defendant for twenty minutes to determine whether he "regurgitate[d] or introduce[d] any foreign substance suspected of containing alcohol into his mouth or nose." *Id.* There was testimony that the officer observed Defendant for twenty minutes and there was no testimony that Defendant regurgitated or introduced any foreign object into his mouth during that time. We conclude that the State met its burden of showing that the test was conducted in accordance with the applicable regulation.

**3. Admission of the BAC Test Results Was Not Error Even Though There Had Been a Prior Out–of–Range Calibration Test**

{27} Defendant contends his conviction should be reversed because the BAC test was performed on a malfunctioning machine and the State failed to show that the "out of range" reading produced at an earlier date did not affect the reliability of the test. If a defendant raises an issue as to the validity of a BAC test result, the State must make a threshold showing that the result was reliable in order for the results to be admitted into evidence. *See State v. Christmas*, 2002–NMCA–020, ¶ 10, 131 N.M. 591, 40 P.3d 1035. Evidentiary rulings are reviewed for an abuse of discretion. *Id.* ¶ 8. We conclude that the district court did not abuse its discretion in determining that the State met its

burden of making the required threshold showing of the reliability of the BAC test results. *See id.* ¶¶ 8–12.

{28} At trial, the State called Julie Lucero, a forensic toxicologist who works for the State Laboratory Division, to testify regarding the reliability of the Intoxilyzer 5000, commonly called the IR 5000, which was the machine used to test Defendant's BAC. On cross-examination, defense counsel raised the issue of the reliability of the IR 5000 by eliciting testimony that there was a test sample that was out of range on January 11, 2001, and that the machine was sent for preventative maintenance on January 24, 2001.

{29} Ms. Lucero described the maintenance performed and testified that, during the inspection, there was no problem with the IR 5000. During the preventative maintenance, a calibration check was done, in which the machine produced readings within the guidelines set by the State Laboratory Division. *See* Regulations Governing Blood and Breath Testing Under the New Mexico Implied Consent Act, 6 N.M. Reg. No. 3 at 278.

{30} Defendant claims that, despite the within-range calibration check, the State failed to meet its burden of making a threshold showing of validity because the State did not show the cause of the prior out-of-range reading, nor did the State explain how the problem was corrected. The proper threshold showing of the validity of the BAC test is made when the State shows that it complied with the regulations of the State Laboratory Division of the Department of Health. *Gardner,* 1998–NMCA–160, ¶ 11, 126 N.M. 125, 967 P.2d 465. Regulations required the machine to be calibrated every seven days and the results of the calibration check to be within .01 grams of alcohol per 210 liters of the target solution. Regulations Governing Blood and Breath Testing Under the New Mexico Implied Consent Act, 6 N.M. Reg. No. 3 at 278 ("Breath analysis instruments shall be field certified for proper calibration at least once in every seven-day period by a certified key operator using a solution of ethyl alcohol authorized by the Scientific Laboratory Division. . . . A field certification

is valid when the results of the approved ethyl alcohol solution test is at target value + .01 grams per 210 liters.").

{31} Because the State showed that the IR 5000 was calibrated and functioning properly within the seven-day period prior to Defendant's BAC test on January 27, 2001, we hold that the calibration requirements in the regulations were met and that it was not an abuse of discretion for the district court to admit the results of the BAC test. Defendant's arguments regarding the reliability of the IR 5000 went to the weight of the evidence and not its admissibility, and the court properly let the issue go to the jury. *See Gardner,* 1998–NMCA–160, ¶ 10, 126 N.M. 125, 967 P.2d 465.

## 4. Defendant Did Not Preserve the Confrontation Clause Issue

{32} Defendant argues that the district court refused to allow him to cross-examine the officer regarding the field sobriety tests after the State was afforded ample direct examination on those tests and that Defendant was therefore denied the right to confront his accusers. During defense counsel's cross-examination of the officer, he asked whether there was snow or ice on the ground where Defendant stepped out of his vehicle. The officer testified that he did not look at the ground in that spot and that he did not remember snow being there. Then the court asked counsel to approach the bench. During the bench conference, defense counsel was told that his cross-examination of the officer on the subject of the field sobriety tests was becoming tedious. The State noted that it would object, if necessary, on the grounds that questions had been asked and answered. Defense counsel stated he would have to continue. After the bench conference, defense counsel questioned the officer on whether he remembered snow being on the ground. The State objected that the question was asked and answered, and the court sustained the objection. No other questions were asked during cross-examination on the subject of the field sobriety tests.

{33} "The issue of denial of the right to confrontation may not be raised for the

first time on appeal." *State v. Lucero,* 104 N.M. 587, 590–91, 725 P.2d 266, 269–70 (Ct. App.1986). In *Lucero,* the defendant did not make an objection at the time one would have been expected, and though he made an objection earlier, his objection was on the basis that there was no exception to the hearsay rule for the testimony elicited. *Id.* at 591, 725 P.2d at 270. The court found that the "defendant's objection was not sufficiently specific to alert the trial court to the claimed constitutional error.... The court had no opportunity to reach the confrontation issue." *Id.* (citations omitted). In the present case, Defendant at no time alerted the district court that its ruling violated his right to confront the witnesses against him. Thus, we hold that Defendant failed to preserve his Confrontation Clause claim.

**5. Defendant's Seizure Was Not Unreasonable**

{34} Defendant claimed that his stop was unreasonable and filed a motion to suppress any evidence obtained as a result of the stop. The district court denied his motion. "We review the denial of a suppression motion to determine whether the trial court correctly applied the law to the facts viewed in the manner most favorable to the prevailing party." *State v. Brennan,* 1998–NMCA–176, ¶ 10, 126 N.M. 389, 970 P.2d 161. "While we afford de novo review of the trial court's legal conclusions, we will not disturb the trial court's factual findings if they are supported by substantial evidence." *State v. Leyba,* 1997–NMCA–023, ¶ 8, 123 N.M. 159, 935 P.2d 1171. An officer may stop a vehicle when he has "a reasonable, articulable suspicion that Defendant was violating traffic laws." *Brennan,* 1998–NMCA–176, ¶ 11, 126 N.M. 389, 970 P.2d 161. "[A] reasonable suspicion may be a mistaken one." *Id.* ¶ 12 (internal quotation marks and citation omitted).

{35} Defendant argues that the officer could not see that Defendant's vehicle had crossed left of the center of the roadway because there were gas pumps obstructing his view, it was dark, the distance was too great, there was no line marking the center of the roadway, and the officer was talking to another officer. However, the officer testified that he saw Defendant turning and believed that Defendant's vehicle crossed left of the center of the roadway. Viewing the facts in the manner most favorable to the prevailing party, based on the officer's testimony we conclude there was substantial evidence that he observed Defendant cross left of the center of the roadway. Crossing left of the center of a roadway is a traffic violation under either NMSA 1978, § 66–7–308 (1978), or NMSA 1978, § 66–7–313 (1978). That Defendant was not charged with violating either of these statutes is immaterial because our analysis only focuses on whether the officer articulated a reasonable suspicion that Defendant violated the statutes. *See Brennan,* 1998–NMCA–176, ¶ 10, 126 N.M. 389, 970 P.2d 161 ("The police may conduct investigatory stops where they have a reasonable, objective basis for suspecting a person is engaged in criminal activity."). There was no unreasonable search or seizure and the district court did not err in denying Defendant's motion to suppress.

**6. There Was No Prejudicial Prosecutorial Misconduct or Denial of a Fair Trial**

{36} Defendant argues that his conviction should be reversed based on three comments by the prosecutor, which he claims were improper and prejudicial, and based on the district court's failure to take measures to remedy the claimed prejudice from the comments.

{37} Defendant essentially claims prosecutorial misconduct. When a timely objection is made to a claim of prosecutorial misconduct,

> we determine whether the trial court abused its discretion by denying a motion for a new trial based upon the prosecutor's conduct, by overruling the defendant's objection to the challenged conduct, or by otherwise failing to control the conduct of counsel during trial. The trial court's determination of these questions will not be disturbed unless its ruling is arbitrary, capricious, or beyond reason. Our ultimate determination of this issue rests on whether the prosecutor's improprieties had

such a persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial.

*State v. Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807 (citations omitted).

### a. The Prosecutor's Reference to the Police Report

{38} The first instance of claimed prejudicial error involved the prosecutor referring to the police report concerning Defendant's arrest. Defendant testified at trial that he had a couple of beers at a bar earlier that night. During cross-examination, the prosecutor asked Defendant whether he initially told the officer that he had not had any beers. When Defendant responded by saying he did not tell the officer that he had not had anything to drink, the prosecutor said: "if I told you that it's in the [police] report, that you told him that you had not been. . . ." At this point, defense counsel objected on the ground that the officer did not testify whether Defendant told him that he had not been drinking. The court stated that the jury would remember the officer's testimony and that the court was not going to make a decision on the objection. Moments later, the prosecutor asked Defendant, "You told the officer that you had been at your parent's that night, right?" Defendant stated that he told the officer he was at the bar. The prosecutor then asked, "That's not in the report, would that surprise you?" Defense counsel objected, stating, "he didn't do the report." The court sustained the objection before defense counsel finished his argument. On appeal, Defendant argues that the prosecutor's comments were attempts to discredit Defendant and were improper and prejudicial because they gave a false impression of fact to the jury.

{39} The district court did not abuse its discretion in failing to sustain Defendant's first objection based on the court's curative comment and Defendant's failure to focus on an applicable evidentiary rule. Similarly, the district court did not abuse its discretion in sustaining Defendant's second objection, which we interpret as falling under Rule 11–602 NMRA (requiring personal knowledge). Moreover, the prosecutor's alleged improprieties in this case did not have "such a

persuasive and prejudicial effect on the jury's verdict that the defendant was deprived of a fair trial." *Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. We find no prejudicial effect on the jury's verdict because the jury found that Defendant drove with an unlawful BAC, and any opinion as to Defendant's credibility would not have a material bearing on that determination. Because the alleged misconduct could have no effect on the jury's verdict, Defendant was not prejudiced or denied a fair trial.

{40} Defendant further argues that even though his second objection was sustained, the prosecutor's comments were so prejudicial that the court had a duty to give a curative instruction or take some other step to remedy the prejudice caused by the statement, relying on *Enriquez v. Cochran,* 1998–NMCA–157, 126 N.M. 196, 967 P.2d 1136. In *Enriquez,* a personal injury case, defense counsel made improper references to the defendant's ability to pay a verdict against him, knowing full well that the defendant had insurance which would likely cover the full amount of any award. *Id.* ¶¶ 132, 134. In *Enriquez,* this Court stated: "[t]he trial court did nothing in response to Plaintiff's objections beyond instructing the jury to 'ignore the last remark[.]' . . . This single admonition, in the absence of other cautionary or corrective instructions, was insufficient to meet the false impression left by Counsel's statement." *Id.* ¶ 136.

{41} *Enriquez* is distinguishable from the case at hand on several grounds, the most compelling of which is that in *Enriquez,* the plaintiff asked for a curative instruction and the court refused. *Id.* ¶ 137. Here, Defendant did not request a curative instruction, but nonetheless appears to argue, based on our language in *Enriquez,* that the court had a sua sponte duty to give a corrective instruction. We decline to make such a rule. It is the duty of the complaining party to request a curative instruction. *State v. Sandoval,* 88 N.M. 267, 268, 539 P.2d 1029, 1030 (Ct.App.1975). *Enriquez* is also distinguishable because there the district court found that the comment had a prejudicial effect and, in this case, there was no such

prejudice. 1998–NMCA–157, ¶ 138, 126 N.M. 196, 967 P.2d 1136. Defendant was not denied a fair trial on the basis of the references to the police report by the prosecutor.

**b. The Prosecutor Stated, "I don't see any [snow], do you see any?"**

{42} The second claimed instance of prosecutorial misconduct occurred during cross-examination of Defendant after Defendant pointed out snow in a picture. The prosecutor responded: "I don't see any [snow], do you see any?" Defense counsel objected, and the objection was sustained before defense counsel even stated a ground for the objection. The pictures were published to the jury.

{43} We will assume, without deciding, that this comment by the prosecutor was an improper comment on the evidence. *See State v. Reynolds,* 111 N.M. 263, 266, 804 P.2d 1082, 1085 (Ct.App.1990) ("[T]here are restrictions on the prosecutor's freedom to express an opinion to the jury[.]"). We, nonetheless, see no abuse of discretion by the district court. The court's actions in sustaining Defendant's objection and publishing the pictures to the jury would have cured any prejudice from the prosecutor offering his own opinion on the evidence. Concluding that the district court's actions were reasonable and that there was no prejudice, we hold that this instance of claimed prosecutorial misconduct did not deny Defendant a fair trial. *See Duffy,* 1998–NMSC–014, ¶ 46, 126 N.M. 132, 967 P.2d 807. Further, even assuming there were prejudice, we reiterate that there was no sua sponte duty on the part of the court to take any further action to remedy the prejudice as Defendant argues.

**c. Reference to the Booking Sheet**

{44} The final instance of claimed prosecutorial misconduct occurred after Defendant testified that he had a can of chewing tobacco with him when arrested and that the tobacco was listed on the booking sheet at the jail. During the State's cross-examination of Defendant, the following colloquy took place:

Prosecutor: Did you have a can of Red Seal that night or Coppenhagen?

Defendant: Red Seal.

Prosecutor: And you said you were booked with that?

Defendant: Yes, I was.

Prosecutor: May I approach your honor?

The Court: You may.

[unknown speaker]: Is that off the booking report?

Defense Counsel: That's not off of the booking report. I'd object. I'd called the jail and had them bring it [ ] over, the booking report it has his personal effects, it has a can of Red Seal in it. So if he's going to show this he needs to ...

The Court: If you are testifying Mr. Lindsey, why don't you do it up here at the bench.

Defense Counsel: I'm sorry your Honor. I apologize.... My objection would be that that's incomplete and if they are going to offer it they need to do the whole file.

The Court: Approach.

Defense Counsel: ... and I object to all of it, it's hearsay [inaudible] ... it's incomplete and it's misleading [inaudible].

The Court: Before evidence closes in this case I want to see that report.

{45} Apparently after the close of evidence, defense counsel obtained the entire booking sheet from the jail and offered it into evidence. The court did not admit it into evidence, stating as the grounds for its ruling that evidence had already closed, he did not believe the jury had been misled about the booking sheet, and he did not believe that it would be proper to admit the booking sheet at the time because no one was available to authenticate it. Neither version of the booking sheet was shown to the jury; nor is either version included in the record on appeal.

{46} The only mention of the booking sheet in the presence of the jury was made by defense counsel and the State's version of the booking sheet was not offered or introduced into evidence. Defendant failed to timely offer his version of the booking sheet. Under these circumstances, we see no error and Defendant has not alerted us as to how there was a violation of a rule of evidence.

Finding no error, we reject Defendant's argument that the district court had a duty to allow the booking sheet into evidence to correct the alleged prosecutorial misconduct. We hold that the court did not abuse its discretion in refusing to admit the full booking sheet into evidence.

{47} In conclusion, looking at all of the instances of claimed prosecutorial misconduct, both separately and together, we conclude that Defendant was not denied a fair trial.

### 7. There Was Not Cumulative Error

{48} Defendant claims that cumulatively the errors in his trial were so prejudicial as to require reversal.

> Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial[.] ... The doctrine cannot be invoked if no irregularities occurred, or if the record as a whole demonstrates that a defendant received a fair trial[.]

*State v. Martin*, 101 N.M. 595, 600–01, 686 P.2d 937, 942–43 (1984) (citations omitted). Given that, even assuming that there conceivably were errors in Defendant's trial, we have found no prejudice and no cumulative error.

### 8. The District Court Did Not Err by Denying the Motion for Directed Verdict

{49} Defendant argues that the district court should have granted his motion for a directed verdict because there was insufficient evidence to convict him of DWI .08. Defendant argues that the jury must have believed that the results of the BAC test were unreliable because the jury did not convict him for aggravated DWI .16 even though the results of the tests were .17 and .18. He argues that, because the jury believed that the tests were unreliable, it could not have reasonably relied on the results of the BAC test at all. Further, he argues that the field sobriety tests alone cannot possibly show that Defendant had a BAC of .08 or greater.

{50} "The question presented by a directed verdict motion is whether there was substantial evidence to support the charge." *State v. Dominguez*, 115 N.M. 445, 455, 853 P.2d 147, 157 (Ct.App.1993).

> In reviewing a claim of insufficient evidence, we determine whether there is substantial evidence of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to every element of the crime charged. We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all reasonable inferences in favor of the verdict. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The question on appeal is not whether substantial evidence would also have supported a verdict of acquittal, but whether substantial evidence supports the verdict rendered.

*State v. Caudillo*, 2003–NMCA–042, ¶ 7, 133 N.M. 468, 64 P.3d 495 (internal quotation marks and citations omitted).

{51} Once the .17 and .18 BAC test results were admitted in evidence, the State had met the foundational requirements and the jury was required to determine if Defendant's BAC was .16 or greater beyond a reasonable doubt in order to convict him of aggravated DWI. The jury acquitted Defendant of aggravated DWI. Yet the jury convicted him of DWI .08, presumably determining that reasonable doubt existed that the .17 and .18 readings were sufficiently accurate to convict for aggravated DWI, but that those readings were sufficiently accurate, beyond a reasonable doubt, to convict based on a BAC of .08 to .15. Evidence before the jury as to Defendant's claimed tobacco use, as well as testimony indicating there was an allowable margin of error in BAC readings, gave the jury a rational basis on which to consider the BAC readings with some scepticism, yet also a rational basis on which to find the BAC readings probably indicative of a BAC somewhere between .08 and .15. Our cases indicate that a defendant's contentions that a BAC test has been compromised in some manner goes to the weight of the evidence. *See State v. Montoya*, 1999–NMCA–001, ¶ 12, 126 N.M. 562, 972 P.2d 1153; *Gardner*, 1998–

NMCA–160, ¶ 17, 126 N.M. 125, 967 P.2d 465. We conclude that it was not error to permit the jury to consider whether Defendant was guilty of DWI .08. *Cf. State v. Baldwin,* 2001–NMCA–063, ¶ 23, 130 N.M. 705, 30 P.3d 394 (stating that, in New Mexico, "a jury may reasonably infer that an excessive BAC reading relates back to the time of driving").

**CONCLUSION**

{52} For the foregoing reasons, we affirm.

{53} **IT IS SO ORDERED.**

WE CONCUR: MICHAEL D. BUSTAMANTE, Chief Judge, and LYNN PICKARD, Judge.