This decision of the New Mexico Court of Appeals was not selected for publication in the New Mexico Appellate Reports. Refer to Rule 12-405 NMRA for restrictions on the citation of unpublished decisions. Electronic decisions may contain computer-generated errors or other deviations from the official version filed by the Court of Appeals.

## IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**No. A-1-CA-38619**

**STATE OF NEW MEXICO,**

   Plaintiff-Appellee,

v.

**JOSE ARVIZO,**

   Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Cristina Jaramillo, District Judge**

Hector H. Balderas, Attorney General
Maris Veidemanis, Assistant Attorney General
Santa Fe, NM

for Appellee

Bennett J. Baur, Chief Public Defender
Mark A. Peralta-Silva, Assistant Appellate Defender
Santa Fe, NM

for Appellant

## MEMORANDUM OPINION

**HENDERSON, Judge.**

**{1}** Following a jury trial, Defendant Jose Arvizo was convicted of four counts of criminal sexual contact of a minor (CSCM) (child under 13), contrary to NMSA 1978, Section 30-9-13(B)(1) (2003); and two counts of criminal sexual penetration of a minor (CSPM) (child under 13), contrary to NMSA 1978, Section 30-9-11(D)(1) (2009). Defendant raises five issues on appeal: (1) the district court erred in failing to grant a mistrial after the State's improper closing argument; (2) the district court abused its discretion by admitting a letter written by child victim (Child) into evidence; (3) the district court erred in allowing two witnesses to vouch for Child's credibility during their

testimony; and (4) the district court erred in allowing the expert witness to share her post traumatic stress disorder (PTSD) diagnosis of Child. Lastly, Defendant argues that the cumulative impact of these errors denied Defendant a fair trial. We hold that none of the issues raised by Defendant give rise to reversible error, nor did they, when considered in the aggregate, deny him his fundamental right to a fair trial. Therefore, we affirm.

## BACKGROUND

**{2}** Defendant is twelve-year-old Child's grandfather. He lived with Child and her family on and off from 2005 to approximately 2016, when Child turned ten. After Defendant moved out of the family home for the last time, Child would regularly stay overnight at his residence. On August 14, 2018, Child hand wrote a letter to her mother disclosing that Defendant had sexually abused her since she was five years old. After reading the letter, Child's mother called the police, and a forensic interview of Child was conducted at S.A.F.E. House. Child also underwent a medical examination through Para Los Ninos (PLN). After these examinations, a search warrant of Defendant's house was executed, and Defendant was arrested and charged with four counts of CSCM, five counts of CSPM, one count of bribery of a witness, and two counts of child abuse.

**{3}** At trial, the lead detective (Lead Detective) assigned to Child's case, was permitted to testify, over Defendant's objection, that Child's statements during her examination at PLN were "of the same nature" as the statements made during her forensic interview at S.A.F.E. House. The nurse practitioner (Nurse Practitioner), who conducted Child's medical examination at PLN, also testified, and in one of her answers to the State's question began to infer that it would be difficult for Child to make up details about abuse. Defendant objected to this comment and moved for a mistrial. The district court denied Defendant's motion, but provided a curative instruction instructing the jury to disregard Nurse Practitioner's comment.

**{4}** Child testified to the details of the sexual abuse she experienced and why and how she ultimately decided to disclose the abuse to her mother. During Child's testimony, the State moved to admit the letter that Child wrote to her mother disclosing the sexual abuse. The letter was admitted over Defendant's objection, and Child read the letter aloud to the jury. During its closing argument, the State reread the letter to the jury and referenced it as the "best piece of evidence" in this case during its rebuttal closing.

**{5}** In the State's rebuttal argument, the prosecutor also referred to Child's forensic interview that was not admitted into evidence. Defendant objected and moved for a mistrial; however, the district court denied the motion and moved on without providing a curative instruction to the jury. The jury found Defendant guilty of two counts of CSCM and four counts of CSPM. Defendant appealed.

## DISCUSSION

## I.      Prosecutorial Misconduct

**{6}**     During the State's rebuttal, Defendant moved for a mistrial on the basis that the State improperly commented on facts not in evidence by stating the following:

> [Defense counsel] also wants you to believe [Nurse Practitioner] asked [C]hild, "Did anything wet or slimy come out of his penis?" That wasn't the question. We clarified this on redirect. The question was, "Did anything come out of him, saliva, urine, maybe semen?" This was a medical history, not a forensic interview. When [Child] saw the doctor, she had already been given a forensic interview. *I'm sorry that you all don't get to see that forensic interview, but I'm sure, as you heard, the Rules of Evidence sometimes don't allow you to see everything you probably want to see.* (emphasis added).

The district court denied Defendant's motion, and told the State, "Just be careful" before moving on without providing a curative instruction. On appeal, Defendant argues that the State's comment constituted misconduct and was not harmless. He further contends that the district court erred by failing to grant his motion for a mistrial or provide a curative instruction to the jury in response.[1] "We review the [district] court's denial of the motion for mistrial for abuse of discretion." *State v. Smith*, 2016-NMSC-007, ¶ 50, 367 P.3d 420.

**{7}**     In examining the propriety of comments by trial counsel during closing arguments, our Supreme Court has held that district courts must strike a balance between the influence that closing arguments can have on a jury and the extemporaneous nature of the closing arguments, especially a rebuttal argument. *State v. Sosa*, 2009-NMSC-056, ¶¶ 24-25, 147 N.M. 351, 223 P.3d 348. For this reason, counsel is afforded reasonable latitude in closing arguments, and jury members are instructed that "they are to base their deliberations only on the evidence along with instructions from the court, and not on argument from counsel." *Id.* ¶ 25. Our Supreme Court has instructed that we consider three factors when analyzing whether statements contained in a closing argument require reversal of a jury verdict: "(1) whether the statement invades some distinct constitutional protection; (2) whether the statement is isolated and brief, or repeated and pervasive; and (3) whether the statement is invited by the defense." *Id.* ¶ 26. In doing so, we evaluate the statements "objectively in the context of the [state]'s broader argument and the trial as a whole." *Id.* As our Supreme Court observed, "*the common thread running through the cases finding reversible error is that the [state]'s comments materially altered the trial or likely confused the jury by distorting the evidence, and thereby deprived the accused of a fair trial.*" *Id.* ¶ 34.

---

1Defendant contends the district court erred by failing to "instruct the jury to disregard the statement." Defense counsel, however, did not request a curative instructive, nor does he develop an argument about the absence of a curative instruction; we therefore, decline to review this issue further. *See State v. Collins*, 2005-NMCA-044, ¶ 41, 137 N.M. 353, 110 P.3d 1090, *overruled on other grounds by State v. Willie*, 2009-NMSC-037, ¶ 18, 146 N.M. 481, 212 P.3d 369.

**{8}** *With regard to the first two Sosa factors, Defendant concedes that the State's comment during closing did not invade any particular constitutional protection and that it was only made once. Upon our review of the record, we agree. We cannot identify a constitutional protection the State's comment offended. See State v. Sena, 2020-NMSC-011, ¶ 17, 470 P.3d 227 (stating that a reviewing court is "more likely to conclude that there is reversible error when the [state]'s comments invade a distinct constitutional protection" (internal quotation marks and citation omitted)). Further, the comment in question only occurred once in the State's rebuttal. See Sosa, 2009-NMSC-056, ¶ 29 ("Extensive comment is more likely to cause error, whereas the general rule is that an isolated comment made during closing argument is not sufficient to warrant reversal." (alterations, internal quotation marks, and citation omitted)).*

**{9}** *Finally, looking to the third Sosa factor, "we are least likely to find error where the defense has opened the door to the [state]'s comments by its own argument or reference to facts not in evidence." Id. ¶ 33 (internal quotation marks and citation omitted). Defense counsel argued in his closing argument that Nurse Practitioner was inappropriately suggestive to Child during her exam at PLN by asking Child if anything "wet and slimy" came out of Defendant's penis?* In direct response to Defendant's characterization of Nurse Practitioner's question, during its rebuttal, the State clarified that this was not the question asked, and reminded the jury that during Nurse Practitioner's testimony on redirect the State established the actual question asked of Child. *The State also clarified that this question was asked during Child's PLN exam with Nurse Practitioner, and not asked during her forensic interview, which had occurred at an earlier time. It was then that the State referred to evidence that was not introduced. Although the forensic interview itself was not admitted into evidence, Forensic Interviewer Toledo testified that she conducted a forensic interview with Child. Prosecutors are granted "wide latitude during closing arguments" and "[a] prosecutor's remarks must . . . be based on the evidence or made in response to the defendant's arguments." State v. Sena, 2018-NMCA-037, ¶ 13, 419 P.3d 1240, aff'd in part, rev'd in part, and remanded by Sena, 2020-NMSC-011.*

**{10}** Thus, even if the State's comment was improper, it did not constitute a reversible error because, considering the broader context, it did not invade a distinct constitutional protection, it was brief and isolated, and it was made, at least in part, in response to Defendant's characterization of questions asked during Child's medical exam. In short, the State's comment was not outcome determinative in light of the other evidence presented at trial and did not deny Defendant a fair trial. *See id.* ¶ 17.

## II.    Admission of Child's Letter

**{11}** Defendant contends that the district court abused its discretion in admitting and publishing Child's letter to the jury. Defendant contends that the letter was admitted in error because it was hearsay and did not satisfy the hearsay exception of a then

existing state of mind pursuant to Rule 11-803(3) NMRA, and was not a prior consistent statement pursuant to Rule 11-801(D)(1)(b) NMRA.[2]

**{12}** Hearsay is an out-of-court statement which is later offered in evidence to prove the truth of the matter asserted. Rule 11-801(C). Under our rules of evidence, hearsay is inadmissible unless a valid exception applies. Rule 11-802 NMRA. "We review the admission of hearsay evidence for an abuse of discretion." *State v. Sisneros*, 2013-NMSC-049, ¶ 18, 314 P.3d 665. "An abuse of discretion occurs when the district court's decision can be characterized as clearly untenable or not justified by reason." *State v. Ervin*, 2008-NMCA-016, ¶ 9, 143 N.M. 493, 177 P.3d 1067 (internal quotation marks and citation omitted). "Abuse of discretion has also been defined as being clearly against the logic and effect of the facts and circumstances before the court." *Id.*

## A.     Hearsay Exception–State of Mind

**{13}** Defendant argues that the district court erred in admitting the letter pursuant to Rule 11-803(3) because the "letter contained few statements on [Child]'s state of mind" and "contain[ed] many statements that purport to be the cause of her state of mind." The State concedes that the letter was not admissible under the state of mind exception to the hearsay rule, Rule 11-803(3). "Although the state concedes this issue, we are not bound to accept the state's concession." *State v. Tapia*, 2015-NMCA-048, ¶ 31, 347 P.3d 738 (alterations, internal quotation marks, and citation omitted). Nonetheless, based on our review of the record and applicable law, we agree with the State's concession that the letter was not admissible under the state of mind exception.

## B.     Hearsay Exception–Prior Consistent Statement

**{14}** Defendant also contends that the district court erred in admitting the letter because it is not a prior consistent statement, pursuant to Rule 11-801(D)(1)(b). Defendant argues that the letter was not a prior consistent statement because Defendant did not charge that Child's testimony was due to a recent improper influence or motive, but rather, Defendant contended that the abuse never occurred. *See generally* Rule 11-801(D)(1)(b). The State contends that the district court did not abuse its discretion by admitting the letter because it was not hearsay, and the requirements for the hearsay exception for prior consistent statements were met. *See id.* We assume without deciding that admitting the letter under Rule 11-801(D)(1)(b) was an error, and determine that it was harmless. We explain.

## C.     Harmless Error Analysis

---

[2]Defendant alternatively argues that the admission of the letter violated Rule 11-403 NMRA. However, his argument is limited to one paragraph and is underdeveloped. Accordingly, we decline to further address this argument. *See Elane Photography, LLC v. Willock*, 2013-NMSC-040, ¶ 70, 309 P.3d 53 ("We will not review unclear arguments, or guess at what a party's arguments might be." (alteration, internal quotation marks, and citation omitted)).

**{15}** Having concluded that Child's letter was improperly admitted under Rule 11-803(3) and assuming it was not properly admitted under Rule 11-801(D)(1)(b), we next analyze whether the admission was harmless. Defendant argues that the error in admitting the letter was not harmless, we disagree.

**{16}** "We review improperly admitted evidence for non-constitutional harmless error." *State v. Serna*, 2013-NMSC-033, ¶ 22, 305 P.3d 936. A non-constitutional error is harmless "when there is no reasonable probability the error affected the verdict." *State v. Tollardo*, 2012-NMSC-008, ¶ 36, 275 P.3d 110 (emphasis, internal quotation marks, and citation omitted). The "central inquiry" of harmless error analysis is "whether [the] error was likely to have affected the jury's verdict." *Id.* ¶ 42 (internal quotation marks and citation omitted). "[I]n reaching a judgment as to the likely effect of the error, [appellate] courts should evaluate all of the circumstances surrounding the error." *Id.* ¶ 43. "This includes the source of the error, the emphasis placed on the error, evidence of the defendant's guilt apart from the error, the importance of the erroneously admitted evidence to the prosecution's case, and whether the erroneously admitted evidence was merely cumulative." *Serna*, 2013-NMSC-033, ¶ 23.

**{17}** Despite the fact that the State emphasized the letter's probative value during closing, the key evidence in this case was Child's direct testimony. Child testified that Defendant began touching her inappropriately when she was five years old. She testified that this inappropriate touching would occur at night when she was half-asleep in her bedroom. Child further testified that Defendant progressed from inappropriate touching over her clothes to eventually vaginally penetrating her with his fingers and penis. Child testified that Defendant would do this after he had given her NyQuil. Child's mother's testimony supports Child's accounts of the CSCM and CSPM because she testified that (1) Defendant lived with the family from the time that Child was approximately two or three-years-old to when she was ten years old; (2) Child would regularly stay overnight with Defendant on the weekends at his residence; and (3) Child told her about Defendant giving her NyQuil "all the time" when Child went to Defendant's residence. Therefore, the admission of the letter was merely cumulative to the testimony given, which the jury necessarily believed.

**{18}** In light of the aforementioned evidence presented at trial and all of the circumstances surrounding the letter, we conclude that there is no reasonable probability that the admission of the letter affected the jury's verdict. *See Tollardo*, 2012-NMSC-008, ¶ 36. As such, even though the letter was admitted in error, we conclude it to be harmless.

### III.    Bolstering Child's Credibility

**{19}** Defendant contends that the district court erred by allowing two of the State's witnesses to vouch for Child's credibility. "Evidence will be excluded as improper bolstering when it directly comments on a witness's credibility, but not when it provides incidental verification of a witness's story or only indirectly bolsters that witness's credibility." *State v. Samora*, 2016-NMSC-031, ¶ 42, 387 P.3d 230 (alteration, internal

quotation marks, and citation omitted). "We review the admission of evidence under an abuse of discretion standard and will not reverse in the absence of a clear abuse." *State v. Sarracino*, 1998-NMSC-022, ¶ 20, 125 N.M. 511, 964 P.2d 72.

## A.      Nurse Practitioner's Testimony

**{20}**      Defendant contends that during Nurse Practitioner's testimony she improperly vouched for Child's credibility. In her response to the State's question, "Can you explain what a contextual detail is?" Nurse Practitioner responded:

> Contextual detail is something kids give me that makes me realize they are there. In their mind, they are talking to me, they are there. So it is the little details about what they see, what they feel, what they are doing, what is around them. It is the little details that tell me she's seeing this in her mind. *Kind of hard to make things up when you* . . . (emphasis added).

At trial, Defendant objected and moved for a mistrial after this comment because Nurse Practitioner's comment suggested that the details that Child shared during her examination were an indication of truth and consequently vouched for Child's credibility. The district court denied the motion for a mistrial, but gave the jury the following curative instruction

> The purpose of this [examination] is not to vouch for the credibility of [C]hild; that's a separate matter. It is just simply giving you background information. So to the extent the last statement made does that, in terms of [C]hild's credibility, disregard that. It is up to you to decide if [C]hild, when she testifies, is telling the truth or not telling the truth. And you do that from [C]hild's statements, demeanor, body language, other circumstances in the case and any other evidence in the case. So, again, disregard that last statement and take this testimony for what it is worth.

Even if Nurse Practitioner's comment was a direct comment on Child's credibility, and therefore improper, because the improper testimonial evidence was not intentionally elicited by the State, and in light of the district court's immediate curative instruction, we are unconvinced that Defendant was prejudiced by Nurse Practitioner's statement. *See State v. Armijo*, 2014-NMCA-013, ¶ 9, 316 P.3d 902 (providing, "generally, a prompt admonition from the court to the jury to disregard and not consider inadmissible evidence sufficiently cures any prejudicial effect which might otherwise result," unless the prosecution intentionally elicited the testimony (alterations, internal quotation marks, and citation omitted)). We hold that, even assuming Nurse Practitioner's testimony was improper, the district court did not abuse its discretion by denying Defendant's motion for mistrial and cured any such error by providing the jury with a curative instruction.

## B.      Lead Detective's Testimony

**{21}**    Defendant also contends that Lead Detective was erroneously permitted to comment on Child's testimony by confirming that Child's statements made during her examination at PLN were consistent with her disclosure made during her forensic interview.

**{22}**    We reject Defendant's contention that Lead Detective's testimony improperly bolstered Child's credibility. Evidence will not always be excluded "when it provides incidental verification of a witness's story or only indirectly bolsters that witness's credibility." *Samora*, 2016-NMSC-031, ¶ 42 (alteration, internal quotation marks, and citation omitted). "Incidental verification of victim's story or indirect bolstering of her credibility, however, is not by itself improper." *State v. Alberico*, 1993-NMSC-047, ¶ 89, 116 N.M. 156, 861 P.2d 192. "All testimony in the [state]'s case will tend to corroborate and bolster the victim's story to some extent." *Id.*

**{23}**    In our view, Lead Detective answering in the affirmative that Child's statements made in the examination at PLN were "of the same nature as" her statements or disclosure during her forensic interview, did not directly comment on or bolster Child's credibility. We are not convinced that this evidence impinged on the jury's assessment of Child's credibility. Therefore, the admission of this evidence was not an abuse of the district court's discretion.

## IV.    Nurse Practitioner's Diagnosis of PTSD

**{24}**    Defendant argues that the district court erred by allowing Nurse Practitioner to testify to Child's PTSD diagnosis. Defendant contends that Nurse Practitioner's diagnosis was unreliable because there was no "confirmation based on her own qualifications or from another expert that [she] is typically correct in her diagnoses." We disagree.

**{25}**    Rule 11-702 NMRA states, "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise." We review a district court's decision to admit or exclude evidence, including expert testimony, for an abuse of discretion. *See Alberico*, 1993-NMSC-047, ¶ 58. "A district court abuses its discretion if its decision is obviously erroneous, arbitrary, or unwarranted, or clearly against the logic and effect of the facts and circumstances of the case." *State v. King*, 2012-NMCA-119, ¶ 5, 291 P.3d 160 (alteration, internal quotation marks, and citation omitted). However, in *Alberico*, our Supreme Court expressed that an abuse of discretion review "is not tantamount to rubber-stamping" the district court's decision. 1993-NMSC-047, ¶ 63.

**{26}**    Nurse Practitioner testified that she currently works at PLN, a specialized clinic that sees children who are survivors of sexual violence or unwanted sexual contact. She also explained that she can diagnose patients, she is not required to practice under the guidance of a physician in the state of New Mexico, and she can make the same diagnoses as a physician, including mental health diagnoses. Nurse Practitioner further detailed that she often refers patients to therapy and counseling after making a mental

health diagnosis. Before the State offered her as an expert witness, Nurse Practitioner also testified that she has been qualified seven times as an expert witness in child abuse and sexual assault, and has conducted nearly 300 examinations at PLN since 2018.

**{27}** After Nurse Practitioner was offered by the State as an expert in the field of child abuse pediatrics, Defendant did not object to Nurse Practitioner testifying as a medical practitioner, but did object to her testifying about her diagnosis of Child's PTSD. Nurse Practitioner was received as an expert of child abuse pediatrics, and was permitted to testify that Child "had many symptoms consistent with . . . PTSD."

**{28}** Defendant relies on *State v. Macias*, 1990-NMCA-053, 110 N.M. 246, 794 P.2d 389, to support his argument that an expert, in this case, Nurse Practitioner, "did not demonstrate she had similar experience making diagnoses that were confirmed by a physician, psychiatrist, or psychologist." However, Defendant's reliance on *Macias* is misguided. This Court did not hold that the nurse practitioner in *Macias* was qualified to testify as an expert because she was supervised by physicians who agreed with her diagnoses. *See Macias*, 1990-NMCA-053, ¶¶ 26-27. Rather, the confirmation of the nurse practitioner's diagnoses were simply a part of her experience while she was in a specialized training program in the field of child sexual abuse. *Id.* In fact, the Court in *Macias* held that "[it saw] no need for [the nurse practitioner] to have been a physician or to have her diagnoses confirmed by a physician in order for her to qualify as an expert witness in this area." *Id.* ¶ 27. We conclude the same here. Nurse Practitioner testified to her extensive experience working with and diagnosing children as a nurse practitioner as detailed above. *See Madrid v. Univ. of Cal.*, 1987-NMSC-022, ¶ 18, 105 N.M. 715, 737 P.2d 74 ("One would be hard-pressed to conclude that the witness lacks medical knowledge, skill, experience and expertise simply because she is licensed as a [nurse practitioner] and not as a doctor of medicine."). We conclude the district court did not abuse its discretion in allowing Nurse Practitioner to testify to Child's PTSD diagnosis.

## V.     Cumulative Error

**{29}** Defendant argues that all of the claimed errors, considered together, deprived him of a fair trial. We disagree. "Cumulative error requires reversal of a defendant's conviction when the cumulative impact of errors which occurred at trial was so prejudicial that the defendant was deprived of a fair trial." *State v. Martin*, 1984-NMSC-077, ¶ 17, 101 N.M. 595, 686 P.2d 937. The doctrine is strictly applied, however, and "cannot be invoked when the record as a whole demonstrates that the defendant received a fair trial." *State v. Salas*, 2010-NMSC-028, ¶ 39, 148 N.M. 313, 236 P.3d 32 (internal quotation marks and citation omitted). Because we have concluded there was either no error, or if error did occur, it presented no basis for reversal, and because we find no merit to Defendant's claim that he was deprived of a fair trial, we hold that there was no cumulative error.

## CONCLUSION

**{30}** We affirm Defendant's convictions.

**{31}  IT IS SO ORDERED.**

**SHAMMARA H. HENDERSON, Judge**

**WE CONCUR:**

**JENNIFER L. ATTREP, Judge**

**KRISTINA BOGARDUS, Judge**