2002-NMCA-090

51 P.3d 1191

**STATE of New Mexico,
Plaintiff–Appellee,**

v.

**Vernon McGEE, Defendant–Appellant.**

**No. 21,923.**

Court of Appeals of New Mexico.

June 25, 2002.

Certiorari Denied, No. 27,598,
Aug. 7, 2002.

Patricia A. Madrid, Attorney General, Santa Fe, NM, M. Victoria Wilson, Assistant Attorney General, Albuquerque, NM, for Appellee.

Phyllis H. Subin, Chief Public Defender, Vicki W. Zelle, Assistant Appellate Defender, Santa Fe, NM, for Appellant.

## OPINION

BOSSON, Chief Judge.

{1} We address an issue first discussed in *State v. Hernandez,* 1999–NMCA–105, ¶¶ 24–30, 127 N.M. 769, 987 P.2d 1156, as to when a court sitting without a jury may sua sponte convict the accused of an uncharged crime on the theory that it is a lesser included offense under the *Meadors* doctrine. *See State v. Meadors,* 121 N.M. 38, 908 P.2d 731 (1995). We conclude that the trial court committed reversible error in one of Defendant's convictions, and we reverse that conviction. Because of other convictions not part of this

appeal, we remand for re-sentencing. On an unrelated issue, we affirm the sufficiency of the evidence to convict Defendant for false imprisonment.

## BACKGROUND

{2} Defendant and his wife, Becky (Victim), had a stormy relationship. On June 9, 1999, Defendant returned home from work and told Victim that he intended to quit his job. Victim was unhappy with Defendant's decision and the couple argued until both fell asleep. Two days later the argument turned violent. Victim was assaulted and beaten in various ways and at various times. She was verbally threatened, and kept forcibly from leaving the house.

{3} After initially fleeing the police, Defendant was arrested. While he remained in jail awaiting trial, Defendant wrote letters to Victim that were made part of the record at trial. In those letters, Defendant informed Victim people were watching her every move, that he knew what she was doing and thinking at all times, and that she would never be free of him until one of them was dead. Victim testified that she considered the letters threatening and believed that Defendant would kill her if she testified against him at trial.

{4} The State charged Defendant with four counts based on Defendant's violent conduct on June 11, the day of the incident: aggravated battery against a household member (Count I); false imprisonment (Count II); intimidation of a witness (Count III); and resisting, evading, or obstructing an officer (Count IV). Based on the threatening letters Defendant subsequently wrote Victim from jail, the State charged Defendant with Count V: retaliation against a witness, a second degree felony.

{5} Following a bench trial, Defendant was convicted of aggravated battery against a household member and resisting, evading, or obstructing an officer, both misdemeanors. Defendant does not appeal either conviction. The court found Defendant not guilty of intimidation of a witness as alleged in Count III, based on the altercation between Defendant and Victim that took place on June 11 before Defendant's arrest. The court convicted Defendant of false imprisonment (Count II), a fourth degree felony. He appeals from this conviction, arguing that there was insufficient evidence to support such a verdict.

{6} Regarding Count V (retaliation against a witness), the court determined at the conclusion of the evidence that the intent of Defendant's jail-house letters was not to threaten retaliation against Victim for reporting him to the police, which is the operative crime set forth in the statute. *See* § 30–24–3(B). Instead, the court found that Defendant's threats were intended to intimidate Victim from testifying against him at trial, which is a different crime set forth in a separate section of the same statute. *See* § 30–24–3(A)(2). Acting sua sponte and over Defendant's objection, the court then convicted Defendant of the uncharged crime of intimidation of a witness, a third degree felony, on the basis that the new charge was a lesser included offense of retaliation. *See* § 30–24–3(C). Defendant appeals from this latter conviction, to which we now turn.

## DISCUSSION

### The Court Erroneously Convicted Defendant of the Uncharged Crime of Intimidating a Witness

■ {7} Defendant argues that the trial court erred in convicting him, sua sponte, of the uncharged crime of intimidating a witness. "Whether the trial court erred by convicting Defendant at a bench trial of an uncharged lesser offense is a question of law that we review de novo." *Hernandez,* 1999–NMCA–105, ¶ 24, 127 N.M. 769, 987 P.2d 1156.

{8} At the outset, we look to *Meadors,* 121 N.M. 38, 908 P.2d 731 for guidance on this question. In *Meadors,* our Supreme Court adopted a modified "cognate approach" for determining when an uncharged crime can be submitted to the jury as a lesser included offense at the State's request. *Id.* at 42–44, 908 P.2d at 735–37. The Court in *Meadors,* 121 N.M. at 44, 908 P.2d at 737, centered its analysis on the approach taken earlier in *State v. DeMary,* 99 N.M. 177, 655 P.2d 1021 (1982). *See also Hernandez,*1999–NMCA–105, ¶¶ 24–30, 127 N.M. 769, 987 P.2d 1156 (discussing the *Meadors* analysis in detail).

{9} *Meadors* starts with the accepted proposition that a trial court, upon the State's request, may consider an uncharged offense if the statutory elements of the lesser crime are a subset of the statutory elements of the charged crime, "such that it would be impossible ever to commit the greater offense without also committing the lesser offense." *Id.*, 121 N.M. at 42, 908 P.2d at 735. Simply put, a defendant is on constructive notice that he may have to defend against a lesser included, uncharged offense that satisfies the strict elements test.

{10} However, *Meadors* does not stop at a strict elements analysis. It expands the test to permit a trial court, at the State's request, to consider an uncharged offense as lesser included if

(1) the defendant could not have committed the greater offense in the manner described in the charging document without also committing the lesser offense, and therefore notice of the greater offense necessarily incorporates notice of the lesser offense; (2) the evidence adduced at trial is sufficient to sustain a conviction on the lesser offense; and (3) the elements that distinguish the lesser and greater offenses are sufficiently in dispute such that a jury rationally could acquit on the greater offense and convict on the lesser.

*Id.* at 44, 908 P.2d at 737. Compared to the strict elements test, *Meadors* takes a flexible, fact-dependent, and less doctrinaire approach. The *Meadors* analysis looks to the elements of the respective offenses, not in the abstract, but as seen through the prism of the charging documents and the facts alleged therein. Notice to the accused is the lodestar. By designating an offense as lesser included "only if the defendant cannot commit the greater offense in the manner described in the charging document without also committing the lesser offense," the Court helps ensure that "the defendant should be fully aware of the possible offenses for which he or she may face prosecution and should have ample opportunity to prepare a defense." *Id.* at 45, 908 P.2d at 738; *see also Hernandez*, 1999–NMCA–105, ¶ 26, 127 N.M. 769, 987 P.2d 1156 ("The [*Meadors*] test aims to avoid the inflexibility of the strict elements test while providing notice to the defendant of the crime against which he must defend."). Applying the *Meadors* analysis to the two offenses for which Defendant was first charged and then convicted, we are drawn ineluctably to the conclusion that the trial court committed reversible error.

{11} Initially, we note that the present case does not satisfy the strict elements test. A comparison of the two sections of the statute shows that the elements of the crime of intimidating a witness are not subsumed within the elements of the crime of retaliation against a witness. Retaliation against a witness is defined as,

engaging in conduct that causes bodily injury to another person or damage to the tangible property of another person, or threatening to do so, with the intent to retaliate against any person for any information relating to the commission or possible commission of a felony offense ... given by a person to a law enforcement officer.

Section 30–24–3(B). The crime of intimidation of a witness includes,

intimidating or threatening any witness or person likely to become a witness in any judicial, administrative, legislative or other official cause or proceeding for the purpose of preventing such individual from testifying to any fact, to abstain from testifying or to testify falsely.

Section 30–24–3(A)(2).

{12} The elements differ markedly. Retaliation against a witness requires a finding that the defendant's actions are for the purpose of punishing or retaliating against the victim for *past* conduct. *See* § 30–24–3(B). Intimidation of a witness, however, requires a finding that the defendant's actions are committed for the purpose of preventing the victim from testifying, convincing the victim to testify, or convincing the victim to testify falsely, in the *future*. *See* § 30–24–3(A)(2). Although the accused's conduct in writing threatening letters may be the same for both retaliation and intimidation, the applicable time-frame and the applicable intent differ significantly for each crime. Clearly, in terms of the strict statutory elements of the two offenses, Defendant could have commit-

ted retaliation against a witness without also committing intimidation of a witness as a subset of the former crime.

{13} After exhausting the strict elements analysis, we then look to the crimes as "described in the charging document," to ascertain whether Defendant was on notice that retaliation against a witness necessarily included the offense of intimidating a witness. *Meadors,* 121 N.M. at 45, 908 P.2d at 738. However, nothing in the document charging Defendant with retaliation against a witness provides Defendant with notice that he could also be charged with intimidation of a witness.

{14} Count V of the amended criminal information sets forth that "on or between June 16, 1999 through August 27, 1999, [Defendant] did knowingly engage in conduct that threatened bodily injury to [Victim] with the intent to retaliate against [Victim] for giving information to peace officers relating to the commission or possible commission of a felony offense, contrary to § 30–24–3(B)." (Emphasis omitted.) Count V is based on the letters Defendant wrote to Victim while he was in jail following his arrest. Count V does not put Defendant on notice that he might also need to defend against a charge that he intended to intimidate Victim from testifying against him as set forth in Section 30–24–3(A)(2).

{15} Nor do any of the other charges set forth in the amended information provide notice to Defendant that he would have to defend against a charge of intimidating a witness. Although Count III of the amended information charges Defendant with intimidation of a witness, that count refers specifically to events taking place "on or about June 11, 1999," the day of Defendant's altercation with Victim, and done "with the intent to keep [Victim] from truthfully reporting to a law enforcement officer information relating to the commission of . . . a felony offense, contrary to § 30–24–3(A)(3)." The events that took place leading up to Defendant's arrest are separate from Defendant's subsequent letter writing that took place, as alleged in Count V, "between June 16, 1999 through August 27, 1999." None of the other counts in the charging document enlighten

either Defendant or this Court as to the possibility of having to defend against a charge of intimidating a witness under Section 30–24–3(A)(2).

{16} Accordingly, in applying the *Meadors* analysis to this case, we hold that the offense of intimidating a witness is not a lesser included offense of the crime for which Defendant was charged, retaliation against a witness. Although, as the trial court appeared to indicate, the evidence elicited at trial may have supported a charge of intimidating a witness, that fact alone does not justify a conviction for an uncharged crime. There must be notice in some other form beyond just the evidence eventually produced at trial. *Cf. Hernandez,*1999–NMCA–105, ¶ 30, 127 N.M. 769, 987 P.2d 1156 ("By convicting Defendant of breaking and entering when Defendant only had notice of an aggravated burglary, the trial court violated Defendant's right to notice of the charges against him."). In the case before us, Defendant was not afforded notice of the possible charges he faced, and was deprived of an opportunity to prepare a defense. Thus, the trial court committed error when it convicted Defendant of intimidation of a witness under Section 30–24–3(A)(2). *See, e.g., State v. Roman,* 1998–NMCA–132, ¶¶ 13–15, 125 N.M. 688, 964 P.2d 852 (amending the criminal information to add the charge of shooting at an occupied dwelling at the close of the defendant's case deprived him of notice of the charge in time to defend against it).

{17} The State next takes the position that any error in convicting Defendant of an uncharged crime was harmless. Specifically, the State argues that Defendant's strategy against the retaliation charge was a simple denial that he had ever threatened Victim in his letters; Defendant did not defend on the basis that his threats were directed toward intimidation instead of retaliation. Thus, the State claims that Defendant suffered no prejudice when the charge was changed to intimidation of a witness because, whatever the charge, he would have denied any intent to threaten, a position that the trial court obviously did not believe. The State's approach, however, ignores the fundamental requirement, as emphasized in *Meadors,* that defen-

dants be afforded constitutionally adequate notice of the charges against them.

{18} It would be sheer speculation for this Court to judge what Defendant's strategy might have been to a separate, uncharged crime, on the basis of what he used to defend against a different crime. If Defendant had been properly charged with intimidating a witness, then given the ample evidence of his threats, he might have focused his defense on denying any intent to intimidate rather than denying the threats themselves. We can never know for sure, because Defendant was never alerted to the crime for which he was convicted. An accused should be judged on the basis of what he says in response to what he is accused of doing; not on what he does not say and how that might respond to what he is not accused of doing. Adequate notice of charges is a principle precious to any system of ordered liberty which we will not dilute with a harmless error review.

{19} Moreover, the State has not referred us to any applicable authority for its harmless error proposition. The State cites *United States v. Prentiss*, 256 F.3d 971, 981 (10th Cir.2001) which holds that failure of an indictment to include an essential element of a crime is subject to a harmless error review. *See also United States v. Mojica–Baez*, 229 F.3d 292, 311 (1st Cir.2000) (holding failure of indictment to allege an element of offense subject to harmless error review where the indictment otherwise provided the defendants with fair notice of the charges against them). However, *Prentiss* and *Mojica–Baez* address the failure of an indictment to include all of the essential elements of the crime charged, whereas in the present case, beyond a missing element, the trial court convicted Defendant of a completely different crime. The State's comparison to *Prentiss* is misguided. We are similarly unimpressed with the State's citation of *State v. Gonzales*, 2000–NMSC–028, ¶ 32, 129 N.M. 556, 11 P.3d 131 (applying harmless error doctrine to the State's failure to provide notice of an intent to use a polygraph machine), and *Scull v. New Mexico*, 236 F.3d 588, 600–01 (10th Cir.2000) (holding in a civil case that court entering summary judgment without notice

to the parties was harmless error in the absence of prejudice).

### Defendant's Conviction of False Imprisonment Was Supported by Substantial Evidence

{20} Defendant argues there was insufficient evidence to support his conviction for false imprisonment. In analyzing a sufficiency of the evidence issue, we inquire whether substantial evidence exists of either a direct or circumstantial nature to support a verdict of guilty beyond a reasonable doubt with respect to each essential element of a crime charged. *State v. Apodaca*, 118 N.M. 762, 765–66, 887 P.2d 756, 759–60 (1994). We view the evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary. *State v. Rojo*, 1999–NMSC–001, ¶ 19, 126 N.M. 438, 971 P.2d 829. It is for the trier of fact to determine the weight and sufficiency of the evidence, including all reasonable inferences. *State v. Vialpando*, 93 N.M. 289, 292, 599 P.2d 1086, 1089 (Ct.App.1979). This Court does not substitute its judgment for that of the fact-finder, nor do we re-weigh the evidence. *State v. Hernandez*, 115 N.M. 6, 26, 846 P.2d 312, 332 (1993).

{21} Defendant's conviction of false imprisonment requires a finding that Defendant intentionally confined or restrained Victim without her consent and against her will, and that Defendant did so with the knowledge that he had no lawful authority to do so. *See* NMSA 1978, § 30–4–3 (1963); UJI 14–401 NMRA 2002. Evidence was presented that Defendant pinned Victim down in the master bedroom to keep her from leaving and would not allow Victim to walk freely through the house. He also rigged the door so that Victim could not leave the house and removed the phones so that Victim could not call the police. Defendant choked Victim until she passed out. Finally, there was evidence that Defendant's actions were done with physical force.

{22} We hold that the trial court reasonably could have relied on this evidence to support Defendant's conviction of false im-

prisonment. We recognize that Defendant appears to have allowed Victim to use the cordless phone, and that Victim had previously consented to being restrained when she was upset and violent. Defendant also argues that he was justified in restraining Victim so that she would not injure herself in her anger. However, it was the trial court's prerogative to disbelieve Defendant or to reject the inferences Defendant asked it to draw from the evidence. *See State v. Sutphin*, 107 N.M. 126, 131, 753 P.2d 1314, 1319 (1988).

{23} Defendant further argues that Victim's testimony was uncorroborated to the effect that Defendant restrained her without justification or excuse, and that such testimony alone could not satisfy the State's burden of proof beyond a reasonable doubt. However, "[t]here is no reasonable-doubt preclusion unless circumstantial evidence viewed in the light most favorable to the State also gives rise to an equally reasonable inference of innocence." *Apodaca*, 118 N.M. at 766, 887 P.2d at 760 (emphasis omitted). The trial court's determination that Defendant falsely imprisoned Victim necessarily rebuts any equally reasonable inference of innocence. We agree with the trial court. We hold that the evidence, seen in the light most favorable to the verdict, rationally supports a verdict of guilty and does not support an equally reasonable inference of innocence.

## CONCLUSION

{24} We reverse Defendant's conviction for intimidation of a witness (Count V) and remand for further proceedings in regard to re-sentencing. We affirm Defendant's conviction for false imprisonment (Count II).

{25} **IT IS SO ORDERED.**

WE CONCUR: JAMES J. WECHSLER, and IRA ROBINSON, Judges.