This memorandum opinion was not selected for publication in the New Mexico Appellate Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**STATE OF NEW MEXICO,**

Plaintiff-Appellee,

v.                                                            **NO. 33,472**

**LATISHA SHIPLEY,**

Defendant-Appellant.

**APPEAL FROM THE DISTRICT COURT OF ROOSEVELT COUNTY**
**Donna J. Mowrer, District Judge**

Hector H. Balderas, Attorney General
Santa Fe, NM
Sri Mullis, Assistant Attorney General
Albuquerque, NM

for Appellee

Jorge A. Alvarado, Chief Public Defender
Santa Fe, NM
Vicki W. Zelle, Assistant Appellate Public Defender
Albuquerque, NM

for Appellant

**MEMORANDUM OPINION**

**VANZI, Judge.**

{1} Defendant Latisha Shipley appeals her conviction for trafficking methamphetamine, contrary to NMSA 1978, Section 30-31-20 (2006). She argues that (1) the district court abrogated its gatekeeping function under Rule 11-702 NMRA by qualifying Officer Aguilar as an expert; (2) the State's failure to notify the defense of its intent to call the officer as an expert was fundamentally unfair; (3) the State failed to establish the corpus delicti of intent to distribute by sufficient independent evidence; and (4) there was insufficient evidence that Defendant intended to transfer the drugs in her possession. We conclude that Defendant's conviction was supported by sufficient evidence and did not violate the corpus delicti rule. However, we agree with Defendant that the district court erred in permitting Officer Aguilar to testify as an expert and that the error was not harmless. As such, we reverse Defendant's conviction and remand for a new trial. We do not consider Defendant's remaining argument concerning notification of intent to call the officer as an expert.

**BACKGROUND**

{2} After the Roosevelt County magistrate court issued a warrant for Defendant's arrest based on a probation violation for DWI, three police officers—Officer Nate Hyde of the Portales Police Department, Officer J.R. Aguilar of the Clovis Police Department, and Officer Gary Ford of the Eastern New Mexico University (ENMU) Police—went to Defendant's classroom at ENMU and removed her from her class. Once she was outside and in the hallway, Officer Hyde told Defendant that there was

2

an active warrant for her arrest and advised Defendant of her *Miranda* rights. After Defendant responded that she understood her rights, Officer Hyde asked whether Defendant knew why the officers wanted to speak to her. Defendant said that the reason had to do "with meth."

{3}      Upon questioning by Officer Hyde, Defendant admitted to possessing methamphetamine and gave the officers two small bags—one from her bra and one from her underwear area—weighing a total of 1.7 grams. Lab tests confirmed that the bags contained methamphetamine, the value of which was about one hundred dollars.

{4}      Defendant was arrested and charged with trafficking controlled substances, contrary to Section 30-31-20(A)(2), (B)(1). After a jury trial, Defendant was found guilty of trafficking methamphetamine. The district court sentenced Defendant to a prison term of two years followed by five years of supervised probation. Defendant timely appealed her conviction. We reserve further discussion of the pertinent facts for our analysis.

**DISCUSSION**

**The District Court Erred in Qualifying Officer Aguilar as an Expert Witness**

{5}      Defendant first argues that the district court erred in permitting Officer Aguilar to testify as an expert in the absence of foundational testimony establishing the reliability of his opinion that Defendant was a narcotics dealer. We agree and reverse.

{6}    While we review the district court's admission of expert testimony for abuse of discretion, "our role is not to simply 'rubber stamp' the trial court's determination." *State v. Torrez,* 2009-NMSC-029, ¶ 9, 146 N.M. 331, 210 P.3d 228. "The abuse of discretion standard should not prevent an appellate court from conducting a meaningful analysis of the admission of scientific testimony to ensure that the trial judge's decision was in accordance with the Rules of Evidence and the evidence in the case." *Id.* (alteration, internal quotation marks, and citation omitted).

{7}    In this case, the State called Officer Aguilar to the stand but did not initially attempt to qualify him as an expert. At some point during his testimony, the prosecutor tried four times to ask Officer Aguilar questions implying that Defendant was a dealer because of the amount of drugs she had. The prosecutor asked: (1) "Would State's exhibit number two be a seller's amount then?"; (2) "What type of dealer is [Defendant]?"; (3) "What type of drugs does she sell?"; and (4) "In your opinion, . . . what type of amounts would [Defendant] be selling?" After each question, defense counsel objected, and the district court told the prosecutor to rephrase the question. After the fourth such instance, the prosecutor changed tack and argued that Officer Aguilar could answer these questions as an expert, based on specialized knowledge, experience, and training. In an exchange that took place in front of the jury, defense counsel objected, and the district court overruled the objection, whereupon the prosecutor asked Officer Aguilar "what level of drugs would

4

a dealer like [Defendant] sell?" Officer Aguilar replied, "Based on what I found on her, it's gonna be your bottom lower-tier of narcotic dealing."

{8}     Our case law establishes different prerequisites for expert testimony based on scientific knowledge and expert testimony based on specialized knowledge. *Torrez*, 2009-NMSC-029, ¶ 21. Where, as here, the alleged expert's opinion is based on specialized knowledge, "the court must evaluate a non-scientific expert's personal knowledge and experience to determine whether the expert's conclusions on a given subject may be trusted." *Id.* The court does this by assessing the expert's "skills, experience, training, or education . . . to test the validity of the expert's conclusions." *Id.* ¶ 22.

{9}     Officer Aguilar's testimony about his qualifications shed no light on his ability to determine whether an accused is a dealer based on the amount of drugs found in the accused's possession. He testified that he had attended an 80-hour school in Florida, a 40-hour class in Albuquerque, and "a couple" of classes in Santa Fe, all of which were "in reference to narcotics." When asked to be more specific, Officer Aguilar testified that the classes involved "task force investigations into narcotics, concealment[] of narcotics," and "some training in . . . reference to drug recognition of narcotics." As far as his experience, Officer Aguilar testified that he "worked undercover, . . . spoke[] with people who deal in narcotics, [and] . . . purchased drugs."

5

**{10}** Notably, Officer Aguilar did not specify any training or experience in how to determine dealer amounts of narcotics versus user amounts. As a result, there was no evidence a fact finder could use to determine the reliability of Officer Aguilar's opinion that Defendant was a dealer due to the amount of methamphetamine on her person at the time of her encounter with police at the university.

**{11}** Officer Aguilar's testimony concerning his training and experience is in sharp contrast to the training and experience of the testifying officer in *State v. Rael-Gallegos*, where this Court affirmed the district court's admission of the officer's opinion that the defendant was engaged in trafficking cocaine. 2013-NMCA-092, ¶¶ 17, 36, 308 P.3d 1016. In that case, the officer testified that she was a lead instructor at a law enforcement academy where her course included "a segment on what are trafficking amounts, and what are possession amounts" and that she had taught the district attorney's office "narcotics awareness, trafficking versus possession amounts and other things of that nature." *Id.* ¶ 24 (alteration, internal quotation marks, and citation omitted). In the present case, Officer Aguilar did not testify about any similar training or experience.

**{12}** We conclude that the district court abused its discretion in permitting Officer Aguilar to offer an opinion that Defendant was a "bottom lower-tier" dealer based on the amount of methamphetamine on her person. We further conclude that the error in admitting this testimony was not harmless error.

6

{13} "To determine whether a non-constitutional error was harmless, we must assess whether there is no reasonable probability that the error affected the verdict." *Torrez*, 2009-NMSC-029, ¶ 33. Here, Officer Aguilar offered an opinion on one of the ultimate facts to be determined by the jury, which was whether Defendant intended to transfer the methamphetamine on her person to another. While experts are permitted to offer opinions on ultimate facts, *see Rael-Gallegos*, 2013-NMCA-092, ¶ 33, the jury was not given UJI 14-118 NMRA, which explains that the jury "may reject an opinion entirely if [it] conclude[s] that it is unsound." Indeed, the district court unduly emphasized Officer Aguilar's opinion by permitting the prosecutor to argue Officer Aguilar's qualifications in the presence of the jury and then overruling the defense objection to the prosecutor's tender of Officer Aguilar as an expert. Because the court explicitly accepted Officer Aguilar as an "expert" in the jury's presence and yet failed to instruct the jury that it could reject his opinion, we cannot say that there is no reasonable probability that his testimony contributed to Defendant's conviction. As was the case in *Torrez*, Officer Aguilar's testimony was the linchpin in the State's evidence that Defendant intended to transfer her drugs to another. *See* 2009-NMSC-029, ¶¶ 31, 33 (holding that admission of the police officer's testimony about the defendant's purported gang motive was more prejudicial than probative in the absence of evidence that the defendant belonged to a gang at the relevant time and that the officer's testimony to this effect was not harmless error

7

because it "was the linchpin in the [s]tate's evidence rebutting [the d]efendant's claim of self-defense"). Therefore, the district court's error in admitting Officer Aguilar's opinion testimony was not harmless.

**The Corpus Delicti Rule and Substantial Evidence**

{14}    Defendant contends that the State failed to establish the corpus delicti of intent to distribute by sufficient evidence nor did the evidence establish the trustworthiness of her statements. Additionally, she argues that there was insufficient evidence to establish that she intended to transfer the methamphetamine in her possession to another. We disagree.

{15}    It is well established that the corpus delicti rule in New Mexico is a modified trustworthiness rule. Thus, "an extrajudicial statement may be used to establish the corpus delicti where the statement is shown to be trustworthy and where there is some independent evidence to confirm the existence of the alleged loss or injury." *State v. Weisser*, 2007-NMCA-015, ¶ 18, 141 N.M. 93, 150 P.3d 1043. In other words, a confession can be used to sustain a conviction if there is sufficient independent evidence to support the corpus delicti. *Id.* ¶ 12. In sum, "Defendant's contention that her admission was untrustworthy is a challenge to the sufficiency of the evidence based on the corpus delicti or trustworthiness rule." *State v. Owelicio*, 2011-NMCA-091, ¶ 15, 150 N.M. 528, 263 P.3d 305.

**{16}** In reviewing a challenge to the sufficiency of the evidence, "[w]e view the [direct and circumstantial] evidence in the light most favorable to the verdict, resolving all conflicts and indulging all permissible inferences to uphold the conviction, and disregarding all evidence and inferences to the contrary." *State v. McGee*, 2002-NMCA-090, ¶ 20, 132 N.M. 537, 51 P.3d 1191. We will not substitute our judgment for that of the fact finder, nor will we re-weigh the evidence. *Id.*

**{17}** The jury was instructed that, to find Defendant guilty of trafficking, the State was required to prove that Defendant had methamphetamine in her possession, knew or believed it to be methamphetamine, and intended to transfer it to another. *See* UJI 14-3111 NMRA (listing elements of trafficking by possession with intent to distribute). Defendant does not dispute that, on the day of her arrest, she was in possession of methamphetamine. Rather, her corpus delicti and sufficiency of the evidence attacks are limited to the third element—that she intended to transfer the methamphetamine to another.

**{18}** The testimony at trial established the following. Portales Police Officer Hyde testified that as part of his experience he had purchased narcotics two times while working undercover. He said that when he questioned Defendant about whether she had methamphetamine in her possession, Defendant first pulled out a small, tightly bound, clear plastic bag from her bra, which Officer Hyde recognized as a "corner baggie." Defendant admitted to Officer Hyde that she sells "twenties to thirties here

9

and there when people ask." "Twenties to thirties" refers to the amount and price of a narcotic, and the amount pulled from Defendant's bra could have been prepackaged for sale or personal use. Officer Hyde testified that Defendant then pulled a larger Ziploc baggie from her underwear area that contained "a significantly larger amount" of methamphetamine. Based on the weight of the baggie, he said that the second package was more likely a seller's amount, and that the value in Defendant's possession was about one hundred dollars.

{19}     Officer Aguilar then took the stand. He told the jury that he had been employed as a Clovis police officer for nine years, about three-and-one-half years of which were with the Drug Task Force, where his primary duty is narcotics investigations. Officer Aguilar testified that, in his opinion, Defendant was a low-level narcotics dealer. He also testified about two chains of text messages that he had downloaded from Defendant's phone, which were admitted into evidence. With respect to the first text chain, Officer Aguilar testified that the text messages indicated a drug deal. In that chain, an incoming text to Defendant asked "Do u got a dubski[?]" which Officer Aguilar told the jury was street lingo referring to twenty dollars worth of narcotics. The second text chain was from an individual who was identified as Defendant's drug dealer although that chain indicated Defendant was buying—not selling—methamphetamine. Officer Aguilar then testified that one final coded text chain was a drug deal. According to Officer Aguilar, the incoming message to Defendant, which

10

read, "Hey tish i dont know if ur n school if so im sorry but do u have a 50 if not please let me know," referred to fifty dollars worth of narcotics. In his opinion, the various text messages established that Defendant's cell phone was being used for the sale of narcotics.

{20}    The above evidence, coupled with Defendant's admission that she "sold twenty here, twenty there" and that she was "a street level dealer," gives rise to the reasonable inference that Defendant committed the crime of intent to transfer methamphetamine to another. Additionally, we recognize that the primary function of the corpus delicti rule is to reduce the risk of convicting a defendant based on her confession for a crime that did not occur. However, in this case, the State presented sufficient corroborating evidence to establish the trustworthiness of Defendant's statements that she sold small amounts of methamphetamine to support her habit and independent proof that she intended to transfer the methamphetamine on her person to another. We therefore conclude that sufficient evidence supported the requisite third element set forth above and that the State sufficiently proved corpus delicti.

**CONCLUSION**

{21}    We reverse Defendant's conviction for trafficking methamphetamine and remand to the district court for a new trial.

{22}    **IT IS SO ORDERED.**

11

_____

**LINDA M. VANZI, Judge**

**WE CONCUR:**

_____

**JAMES J. WECHSLER, Judge**

_____

**TIMOTHY L. GARCIA, Judge**